MARY E. C. THEBAUD, Appellant, *v.* JULIA M. SCHEMERHORN and Others, Respondents.

*Trust for the benefit of a married woman — right to have the property conveyed to her — 1849, chap. 375, sec. 2 — to what cases it is applicable.*

On October 27, 1857, the plaintiff, being seized as tenant in common with her sister of certain real estate, and being about to marry one Clark, made a marriage settlement whereby she conveyed to two trustees all her estate, both real and personal, in trust, to apply the rents and income thereof to her use during her natural life, and upon her decease to convey, assign and deliver the same in such way and manner as she should by her last will and testament appoint; and in default of such appointment, and in case her husband was then dead, then to convey, assign and deliver the same to such person or persons, and in the same manner, shares and proportions as the said estate would have descended if said conveyance had not been made.

The instrument recited that it was intended to place all the property of the plaintiff in trust for her sole and separate use and benefit, free from all debts of her husband, and of any future husband, and of and from his management and control. Clark married the plaintiff and died in 1862. In 1865 the plaintiff married one Thebaud, who is still living. She has two children, one by the first marriage of full age, one by the second a minor.

In March, 1872, she applied, under chapter 375 of 1849, to a justice of the Supreme Court and procured from him a certificate stating that she had sufficient capacity to manage and control her property, and authorizing the surviving trustee to convey it to her for her sole and separate use and benefit. Thereafter and in 1872 the surviving trustee duly conveyed to her, her heirs and assigns, all the said trust estate.

*Held,* that the case was within the provisions of the second section of the said act authorizing a conveyance to be made in such a case, and that by the conveyance from the trustee she acquired a valid title in fee to the said lands.

*McWhorter* v. *Agnew* (6 Paige, 111) followed; *Douglass* v. *Cruger* (80 N. Y., 15), distinguished.

Appeal by the plaintiff from a judgment of the Special Term, dismissing the complaint.

The action was brought for a partition of real estate situate in the city of New York. The plaintiff, wife of Paul L. Thebaud, and the defendant, Julia M., wife of George S. Schermerhorn, are sisters, the only lawful issue and heirs-at-law of William N. Gilbert, late of the said city, deceased, and of Elizabeth Caroline Schermerhorn, his wife, deceased.

William N. Gilbert died on or about the 7th day of July, 1850, seized in fee and possessed of two of the parcels of land described in the complaint (among others), having previously duly executed his last will and testament, whereby he devised all his real estate to his said two children in fee, equally to be divided between them, share and share alike. The mother of the plaintiff died in August, 1849, intestate, seized in fee and possessed of the remaining two parcels of land described in the complaint.

The plaintiff being thus constituted the owner in fee of an undivided half part of the premises in question as tenant in common with her sister, and in view of an intended marriage with Charles Henry Clarke, since deceased, made a marriage settlement, dated the 27th day of October, 1857, between herself of the first part, James T. Gilbert and John C. Corp, trustees, of the second part, and Charles Henry Clark of the third part, whereby she conveyed to the parties of the second part all her estate, real and personal, upon trust, among other things, to apply the rents and income thereof to the use of the party of the first part during her natural life, and upon her decease, to convey, assign, transfer and deliver said trust estate, real and personal, in such way and manner as the said party of the first part, by her last will and testament, or appointment or instrument in writing in the nature of a last will and testament, should devise, bequeath or appoint, and in case the party of the first part should neglect or omit to make and execute such last will or appointment, then to convey, assign, transfer and deliver said trust estate, real and personal, to such person or persons, and in the same manner, shares and proportions as the said estate would have descended if said conveyance had not been made; provided, that if her husband was then living he should have one-half of the income of the trust estate during his life.

The said Charles Henry Clark died on the 20th of March, 1862. On the 5th day of June, 1865, the plaintiff intermarried with Paul L. Thebaud. James T. Gilbert, one of the trustees, having died in March, 1868, John C. Corp, the surviving trustee, continued in possession of the trust estate till March 29, 1872. On the 8th day of March, 1872, the plaintiff made an application, under the provisions of the act of 1849 (chap. 375, p. 528), to Hon. D. P. INGRAHAM, a justice of the Supreme Court, for his certificate of the facts required by said act for the purpose of obtaining the surrender of the trust estate and the resignation of said trustee. The second section of that act provides as follows :

"SECTION 2. Any person who may hold, or who may hereafter hold, as trustee for any married woman, any real or personal estate or other property under any deed of conveyance or otherwise, on the written request of such married woman, accompanied by a certificate of a justice of the Supreme Court, that he has examined the condition and situation of the property, and made due inquiry into the capacity of such married woman to manage and control the same, may convey to such married woman, by deed or otherwise, all or any portion of such property, or the rents, issues or profits thereof, for her sole and separate use and benefit."

The said justice having duly made such examination and inquiry, made his certificate in due form in the words following :

## NEW YORK SUPREME COURT.

| IN THE MATTER |
| --- |
| OF |
| THE PETITION OF MARY ELIZABETH CAROLINE THEBAUD, FORMERLY GILBERT, TO ASSUME CONTROL OF HER PROPERTY, NOW HELD BY A TRUSTEE. |

I, Daniel P. Ingraham, a justice of the Supreme Court of the State of New York, do hereby certify that I have examined the condition and situation of the property set forth in the petition of Mary Elizabeth Caroline Thebaud, formerly Mary Elizabeth Caroline Gilbert, and have made due inquiry into the capacity of said petitioner to manage and control her property, and find that she has sufficient capacity to manage and control her said property, and that John C.

Corp, the surviving trustee named in the deed of trust annexed to and forming part of said petition, may convey to said petitioner the property now held by him as trustee under said conveyance, for her sole and separate use and benefit.

D. P. INGRAHAM,

*March* 8, 1872. *P. J.*

Whereupon, by request of the plaintiff, by deed dated 29th of March, 1872, the surviving trustee duly conveyed to the plaintiff, her heirs and assigns, all the said trust estate, including the undivided half of the lands and premises described in the complaint, together with other property.

The plaintiff and the defendant Mrs. Schemerhorn have, ever since the said surrender of the trust estate, been in possession of the said premises, and in the receipt of the rents and profits thereof.

It was admitted that the plaintiff has two children living, one the issue of her first marriage, who is of full age, and the other the issue of the second marriage, who is a minor.

The plaintiff and her sister have sold and conveyed all the rest of the lands not described in the complaint.

These facts appeared by the uncontroverted allegations of the complaint, and by stipulations read on the trial.

*T. James Glover*, for the appellant.

*Edwin M. Felt*, for the respondent.

BRADY, J.:

The learned justice in the court below regarded the important question herein as one arising from the passage of the enabling statutes of 1848 and 1849 in reference to married women, and determined that the provisions of the act of 1849, under which Judge INGRAHAM acted, did not embrace a trust created by a beneficiary, and had no application therefore to a trust of the character of that to be considered herein, although created by such beneficiary after the passage of such enabling acts.

He said on the subject: "The legislation of 1848 freed her from her peculiar disabilities, and if, in face of this wholesome provision in her favor, a married woman deliberately creates a valid

trust upon her property, it must be regarded as the act of any other person and she must abide its consequences."

He also determined that the trust was still in existence and that a contingent remainder depended upon it which would vest upon the death of the *cestui que trust,* if she failed to limit the right of succession.

And he further held that the trustees had no legal power to extinguish the trust, and therefore the reconveyance which was made under the order of Judge INGRAHAM, if effectual for any purpose, was impressed with the trust.

And he further held that the plaintiff had no *status* in an action for partition ; that she was neither a joint tenant nor tenant in common having an estate of inheritance or for life or for years in the premises in question.

The learned justice referred to the case of *Mc Whorter* v. *Agnew* (6 Paige, 111) which he said involved a similar trust which was correct. It appeared in that case that the husband and one of the trustees died, leaving the plaintiff and a new trustee surviving. They united in a petition to the chancellor for leave to the surviving trustee to account with the plaintiff in regard to the trust, and for permission to convey to her the trust property and praying that he might thereupon be discharged from the trust. An order to that effect was accordingly entered, and the trust property was conveyed to the complainant. The defendant who had made a contract for the purchase of the property, was advised that the real estate forming the *corpus* of the trust was inalienable during the life of the complainant and only alienable at her death by will. But he agreed to perform his contract of purchase, if the court would declare that the complainant had a good and valid title. The complainant, it appeared in that case, was the possessor in fee of the real estate which formed the subject of the trust, and it also appeared that the trust deed was executed in 1818. The deed had characteristics very similar to those which mark the trust deed executed by the plaintiff. The court said that upon the death of her husband and the reconveyance to the complainant of the legal estate, her right to dispose of an absolute interest in the property in fee resulted from her absolute ownership. In other words the exercise

of the right was no longer dependent upon the mere power reserved to her in the deed of settlement.

And the court further said: "The object of the deed of settlement was not to deprive the complainant of the control of her property in case of the death of her husband during her life, but merely to preserve the same for her use and to enable her to dispose of it by will, if she should die during her coverture.;" and further that the whole object of the trust was therefore at an end by the death of her husband; and the object of the trust having ceased to exist, she was entitled in equity to a reconveyance of the legal estate from the trustee. And upon such conveyance the power to appoint the inheritance by will was merged in the legal estate, both at law and in equity.

This case, it is thought, is an authority for sustaining the plaintiff's action, for the reason that the object of the settlement was precisely the same as in the case just cited, and the conveyance to her of the trust estate by the trustee, under and by virtue of the authority conferred upon him for that purpose by Judge INGRAHAM, in accordance with the act of 1849, re-established the fee in her and her original and absolute ownership. The difference between these two cases in favor of the plaintiff arises from the fact that the deed of settlement signed by her was executed in 1857, and therefore subsequent to the act of 1849, which secured to her by its provisions the possession of her property, absolutely and free from any control of her husband over it, and from any liability for his debts. The only control to be apprehended, with such a statute existing, was that which would result from the influence of the husband over his wife, and by which she might be induced to give him full power and authority to make such disposition of the property as he might think best.

The learned judge also referred to the case of *Douglas* v. *Cruger* (80 N. Y., 15), and by which he says: The Court of Appeals refused to sanction the extinguishment of a trust somewhat analogous to the one under consideration. In that case the beneficiary was a ward in Chancery, and upon her petition to the chancellor by her next friend, the marriage and settlement were approved, and the conveyance to the trustee was directed to be executed upon the solemnization of the marriage. This was in 1837. Subsequently

in November, 1848, and on the certificate and order of a justice of the Supreme Court, the trustee executed a deed purporting to convey to the beneficiary, who was the defendant in that case, in fee simple absolute, all the right, title and interest in the land which had been conveyed to him upon trust. Thereafter and in 1857, she and her husband executed a mortgage, which was sought to be foreclosed in that action. There were children living who were the issue of the marriage. On behalf of the plaintiff, it was claimed that the trust was extinguished. The court said that the trust was not extinguished, and that upon the death of the trustee in 1868, it vested, by virtue of the statute, in the Supreme Court. And the court, in the course of the opinion delivered, said: " The Supreme Court has not the power to destroy a valid trust. The purpose of the statute was to make these trust estates and trust interests indestructible and absolutely inalienable during the existence of the trust."

And it was further said: " It is claimed, however, that the court had authority to sanction this conveyance under the act for the more effectual protection of the property of married women, passed in 1848," which it was said contained nothing conferring such authority. · The court further said : " In the act on the same subject, passed in 1849 (chap. 375, Laws of that year) there was a provision conferring such authority upon a justice of the Supreme Court, but," the court said, " the conveyance by the trustee in this case was prior to the passage of the last named act, and that act cannot, therefore, be invoked to uphold it." This case is certainly an authority for the proposition that the statute of 1849 does confer authority upon the Supreme Court to direct the conveyance by a trustee to the *cestui que trust.* The Court of Appeals, so far as anything is said on the subject, clearly indicates that the act of 1849 confers such authority, but hold that it was not applicable in that case for the reason that the trust deed was executed prior to its passage. The effect of the act of 1849 (*supra*), and the proceeding under it resulting in the order made by Justice INGRAHAM, and the conveyance by the trustee to the plaintiff under and by virtue of the order which he made in the premises, all of which was done by competent power and jurisdiction conferred upon the Supreme Court for that purpose, establishes, it would seem beyond question, the right of the plaintiff

to maintain the action for partition, as a joint owner in fee of the pieces of land described in the complaint which had been the subject of a trust deed, but which was relieved from its covenants, and the fee of the real estate covered by it reinvested in her.

It may be. said that the case of *Douglas* v. *Cruger* is in conflict with the case of *McWhorter* v. *Agnew,* but it is not; the facts are different. As we have seen in the case of *McWhorter* v. *Agnew,* the husband died prior to the wife, and in the case of *Douglas* v. *Cruger* he was living at the time of the transfer to her by virtue of the order of the court, and seems from the case to have been one of the defendants in that action. The distinction between the two cases indeed is quite apparent from this statement of the court, viz.: " It was suggested upon the argument that this trust to Mrs. Cruger is void because not for her life. It is a trust for the joint lives of herself and her husband. If she dies first it terminates with her death. If he dies first it terminates with his death." The husband of the plaintiff in this action having died, the trust terminated with his death; and hence the distinction between this case and that of *Douglas* v. *Cruger,* and its harmony with the case of *McWhorter* v. *Agnew.* In one case the trust had ceased by the death of the husband, and in the other it had not.

It may be said further that there was nothing in the trust deed itself which prevented the proceedings referred to. Indeed the reliance of the respondents in this case is upon a preamble, which is as follows :

" And whereas, it is the object, true intent and meaning of these presents, to place and vest all the said real estate and property of the said Mary Elizabeth Caroline Gilbert in trust for her sole and separate use and benefit, notwithstanding her coverture, so as at all times hereafter, during the lifetime of said Mary Elizabeth Caroline Gilbert, to be free and exempt from the present and future debts, liabilities and responsibilities of the said party of the third part, or of any other future husband, and of and from his management and control, and to be secured to the uses and trusts hereinafter mentioned," in connection with the provisions of the third clause in the deed.

An examination of the deed itself will show that the trusts were therein distinctly stated, and that they relate exclusively to the

parties named in it, *i. e.*, the plaintiff, the trustees and her intended husband, and that the trusts do not embrace, as supposed, any right or interest of any future husband, whatever may have been the intention or object which prompted the execution of the instrument. The provisions in it securing to the intended husband independent individual interests in the estate, depended upon her death prior to his; and if he died before her, as said in the case of *McWhorter* v. *Agnew* and in *Douglas* v. *Cruger* (*supra*), the whole object of the trust was at an end. There is nothing in the third clause in any way in conflict with this view, which, as will be seen, merely provides that upon the plaintiff's neglect or omission to make and execute a last will and testament, or appointment, or instrument in the nature of a last will and testament, or if she shall make or execute the same imperfectly and insufficiently, then, at and upon her decease the trust estate then remaining in the hands of the trustees, or the survivor of them, shall be conveyed, assigned, transferred, made over, paid and delivered to such person or persons, and in the same manner, shares and proportions as the said estate would have descended and passed if the deed had not been made; that is to say, should descend to her heirs.

As very properly observed by the counsel for the appellant, there is no trust estate for anybody after the life estate, in case of the death of the contemplated husband prior to that of the plaintiff. It is a direction to transfer and deliver, and to transfer and deliver according to the law of descent, which is nothing more than a declaration of what would necessarily happen if the plaintiff continued to be the owner of the property and, dying intestate, left persons capable of taking it by descent.

Having arrived at the conclusion that under the act of 1849 and the order made in pursuance of it, the estate of the plaintiff, which was the subject of the trust deed, was reinvested in her in fee simple, it is unnecessary to consider any other question in the case, if there be any, remaining undisposed of pertinent to this controversy.

For these reasons it is thought the judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., concurred.

DANIELS, J.:

The language in which section 2 of chapter 375 of the Laws of 1849 was framed is so broad that it may reasonably be construed as including the deed made by the plaintiff to her trustees. For it was applied to cases in which real or personal estate or property should be held in trust "under any deed of conveyance," which would clearly include a deed made by the person afterwards intended to be benefited by the trust. No phraseology could well be broader or more comprehensively selected. It is without exception. And as none can be implied from any other portion of the act, it should be construed as including the deed executed by the plaintiff, by which her interest in the estate was conveyed to the trustees.

The fact that she reserved to herself a general power of appointment of the fee of the estate, did not render the statute inapplicable to this trust, for the power was not restrained in its exercise to any specified person or class of persons. It was of the most general and unqualified description, and her right or authority to make use of the power could be in no manner abridged or affected by a reconveyance of the fee to her. Afterwards, as well as during the continuance of the trust, her power over the estate was the same, for she could still devise it to whomsoever she chose, and in default of a devise it would descend to her heirs, as that was declared to be her intention by the plain language of the deed.

The case, therefore, was within the principle settled by *Mc Whorter* v. *Agnew* (6 Paige, 111). The trust there was created, and, as it was held, lawfully extinguished before the Revised Statutes were enacted, and when the court was at liberty to exercise an authority similar to that conferred by the act of 1849. The fact that there was a general power of appointment reserved, was considered not to stand in the way of the termination of the trust. (Id., 116.) And no reason is perceived why such a general power should now prevent the policy of the statute, so plainly expressed, from being carried into effect in the present case. The judgment was erroneous and should be reversed.

Judgment reversed, new trial ordered, costs to abide event.